UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.   08-CR-10223-PBS |
| | ) | |
| ALBERT GONZALEZ, | ) | Criminal No.   09-CR-10262-PBS |
| | ) | |
| Defendant. | ) | |

RENEWED MOTION FOR PSYCHIATRIC EXAMINATION OF ALBERT GONZALEZ

The United States renews its motion for an independent psychiatric examination of

defendant Albert Gonzalez, outside the presence of his counsel.  As explained below, the Court

has inherent authority to order a psychiatric examination; the examination will critically assist

the Court in determining how to evaluate and weigh the defendant's one-sided submission of

purported psychiatric evidence; circuit courts have endorsed this practice; and defense counsel's

presence would be disruptive and unnecessary under the Fifth and Sixth Amendments.

Background

On December 15, 2009,  the defendant submitted to the Court an extensive sentencing

memorandum which relied in material part on a questionable report of a forensic psychiatrist

retained by the defendant.  The report purported to cast doubt on the defendant's "capacity to

knowingly evaluate the wrongfulness of his actions and consciously behave lawfully and avoid

crime" and asserted that his criminal "behavior was consistent with description of the Asperger's

disorder" and  "Internet addiction."

Upon receipt of his psychiatrist's report, the United States asked the defendant to allow a

government expert to examine the defendant with respect to these newly alleged conditions.  He

refused.

The government moved the Court for an order requiring that the defendant make himself available for an independent examination.  On December 21, 2009, the Court denied the government's motion without prejudice.  In doing so, the Court stated that it would reexamine the issue once it knew the areas of inquiry the government's consulting forensic psychiatrist believed necessary, and directed the government describe these areas.  This Renewed Motion identifies the needed areas of inquiry, and addresses certain objections contained in the defendant's opposition to the government's initial motion.

The Areas of Inquiry

The expert consulting with the government will perform a standard psychological forensic exam.  During this he will need to inquire into six areas, much as defendant's Doctor Roth presumably did before preparing his report.  These areas are the defendant's developmental history, family history, social history, medical history, psychiatric history, and version of the offenses for which he is asserting diminished capacity.  The expert will then administer the Minnesota Multiphasic Personality Inventory test (MMPI-2-RF), which is one of the tests most frequently used by trained professionals to assist in identifying personality structure and psychopathology.  Finally, the expert may administer some brief, associated standard tests, if appropriate.

The Recognized Need for an Independent Examination

The government acknowledges that, post *Gall v. United States*, 552 U.S. 38 (2007), the parties are given wide latitude to submit even wholly untested assertions for consideration by the Court at the time of sentencing.  However, as a precondition to giving any weight to the opinions contained in his forensic psychiatric report, the defendant should be required to permit a

psychiatric examination by a government expert for evidence of his alleged conditions.  As noted by both the Second and D.C. Circuits, "[o]rdinarily the only effective rebuttal of psychiatric opinion testimony is contradictory opinion testimony; and for that purpose ... the basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject." *United States v. McSherry*, 226 F.3d 153, 157 (2d Cir. 2000) (quoting *United States v. Byers*, 740 F.2d 1104, 1114 (D.C. Cir.1984) (en banc) (plurality opinion)).

<u>The Court's Authority to Direct a Forensic Psychiatric Examination</u>

The Court has inherent authority to order a mental examination under appropriate circumstances.  *McSherry*, 226 F.3d 153 at 155 (ruling that district court reasonably exercised its inherent power in ordering defendant to either undergo mental examination by government doctors or forego expert testimony concerning his mental condition at trial).  Indeed, courts in at least four circuits have reaffirmed a federal court's inherent power to require a psychiatric examination of a criminal defendant to ensure fundamental fairness. *See United States v. Webster*, 162 F.3d 308, 339 (5th Cir. 1998) (court had inherent authority to compel defendant to submit to a mental health exam by a government expert as a prerequisite to introducing his own expert testimony at a capital sentencing hearing); *United States v. Davis*, 93 F.3d 1286, 1295 (6th Cir. 1996) (court had inherent authority to order reasonable, non-custodial mental examination of defendant who gave notice of her intent to present psychiatric evidence of her mental state at the time of the offense); *United States v. Albright*, 388 F.2d 719, 722 (4th Cir. 1968) (district court in a criminal case has inherent power to require psychiatric examination of defendant, where the defendant has pleaded insanity as a defense, submitted to examination by examiners of his own choosing and presented expert psychiatric evidence in support of his defense); *United States v. Weiser*, 428 F.2d 932, 935-36 (2d Cir. 1969) (joining *Albright* in

declaring that "[i]t would violate judicial common sense to permit a defendant to invoke the

defense of insanity and foreclose the Government from the benefit of a mental examination to

meet the issue").

Although Fed. R. Crim. P. 12.2 addresses the court's power to order a defendant to

submit to a mental examination if he gives notice of an insanity defense or his competency to

stand trial is in question, Rule 12.2 does not extinguish a trial court's inherent authority to order

a mental examination under other appropriate circumstances.  *McSherry*, 226 F.3d 153 at 155.

The defendant is wrong to assert that the Court's inherent authority was limited when Fed. R.

Crim. P. 12.2(c)(1) was amended to further articulate trial courts' authority to order a mental

examination to address claims of insanity or issues of competency.  As the Advisory Committee

stated explicitly:

> The amendment to Rule 12.2(c)(1) is not intended to affect any statutory or
> inherent authority the court may have to order other mental examinations.

Fed. R. Crim. P. 12.2 advisory committee's note (2002).  The Advisory Committee understood

that district courts have inherent authority to order psychiatric exams under the circumstances

and did not seek to abrogate that authority.

Use by the Government of Statements Made During the Examination

The government will not offer any statements made by the defendant during the forensic

examination against the defendant in any criminal proceeding, except on the issue of diminished

capacity in the present cases and in the case before Judge Woodlock, 09-CR-10382.  In keeping

with this, the government requests that as part of its order directing the forensic psychiatric

examination the Court include the following provision modeled after Fed. R. Crim. P. 12.2(c)(4):

> No statement made by the defendant in the course of the examination, no

testimony by the government's expert based on the statement, and no other fruits of the statement may be admitted in evidence against the defendant in any criminal proceeding except on the issue of mental condition raised by the defendant in criminal case numbers 08-CR-10223, 09-CR-10262 and 09-CR 10382.

Fifth and Sixth Amendment Guarantees

A defendant cannot present testimony on his mental condition and yet refuse to answer questions put to him by government experts on Fifth Amendment grounds. *United States v. Sampson*, 335 F. Supp. 2d 166, 247 (D. Mass. 2004) (Wolf, J.). When a defendant puts his mental condition in issue by offering expert evidence, as Gonzalez has here, he may be subjected to compulsory examination by a court appointed or government psychiatrist without infringing on Fifth Amendment protected rights. *See United States v. Byers*, 740 F. 2d 1104, 1109-15 (D.C. Cir. 1984) (*en banc*, Scalia, J. )( "[W]hen a defendant raises the defense of insanity, he may constitutionally be subjected to compulsory examination by court-appointed or government psychiatrists."); *see also*, *United States v. Weiser* (2nd Cir.)*, supra*; *United States v. Albright* (4th Cir.)*, supra*; *United States v. Cohen,* 530 F.2d 43, 47-48 (5th Cir. 1976); *United States v. Bohle,* 445 F.2d 54, 66-67 (7th Cir. 1971), *overruled on other grounds in United States v. Lawson,* 653 F.2d 299, 303 n.12 (7th Cir. 1981); *United States v. Reifsteck*, 535 F.2d 1030, 1034 (8th Cir. 1976); *Pope v. United States,* 372 F.2d 710, 720-21 (8th Cir. 1967) *(en banc), vacated and remanded on other grounds,* 392 U.S. 651 (1968); *United States v. Handy,* 454 F.2d 885, 888-889 (9th Cir.1971); *United States v. Madrid,* 673 F.2d 1114, 1121 (10th Cir. 1982); *accord, United States v. Reason,* 549 F.2d 309, 312 (4th Cir. 1977).

Further, the Sixth Amendment's guarantee of assistance of counsel does not require that the defendant's counsel be present during a psychiatric examination. *Byers*, 740 F.2d at 1121-22

5

(collecting cases).  Indeed, the presence of counsel would be antithetical to the psychiatric

examination process. As noted by then-Circuit Judge Scalia in *Byers*:

> Even if a psychiatric interview otherwise met one of the two theoretical tests for
> Sixth Amendment protection, it would be relevant to consider the pragmatic
> effects of presence of counsel upon the process. The Sixth Amendment, like the
> Fifth (as we have earlier discussed), is not oblivious to practical
> consequences...*The "procedural system" of the law, which is one justification for
> the presence of counsel and which, by the same token, the presence of counsel
> brings in its train, is evidently antithetical to psychiatric examination, a process
> informal and unstructured by design.* Even if counsel were uncharacteristically to
> sit silent and interpose no procedural objections or suggestions, one can scarcely
> imagine a successful psychiatric examination in which the subject's eyes move
> back and forth between the doctor and his attorney. Nor would it help if the
> attorney were listening from outside the room, for the subject's attention would
> still wander where his eyes could not. And the attorney's presence in such a
> purely observational capacity, without ability to advise, suggest or object, would
> have no relationship to the Sixth Amendment's "Assistance of Counsel."

740 F.2d at 1120 (emphasis added).[1]

Conclusion

The Court has inherent authority to order the defendant to submit to a psychiatric

examination by the government's expert outside the presence of his counsel consistent with the

guarantees of both the Fifth and Sixth Amendments.  The defendant has put his mental condition

---

[1] In *Sampson*, Judge Wolf adopted the position of the *Byers* dissent and required that the
government's psychiatric examinations of the defendant be recorded and provided to defense
counsel.  335 F.2d at 248.  Following *Sampson*, a district court in Iowa similarly required taping
of the psychiatric examination while rejecting a defendant's argument that the Sixth Amendment
entitled him to have counsel present during the government's psychiatric examination.  *United
States v. Johnson*, 362 F. Supp. 2d 1043, 1091 (N.D. Iowa 2005).  For the reasons detailed by the
plurality of the court in *Byers*, recording of the forensic examination is not necessary to satisfy
the Sixth Amendment.  740 F.2d at 1120-21.  Indeed, it is intrusive and potentially disruptive of
the examination.

in issue by submitting expert evidence of diminished capacity.  Fundamental fairness and the

preservation of judicial integrity dictate that the government's expert be permitted to examine

him as well.

Respectfully submitted,


By:    /s/ Stephen P. Heymann
       STEPHEN P. HEYMANN
       DONALD L. CABELL
       Assistant U.S. Attorneys


Date: January 14, 2010          CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing (NEF).

        /s/ Stephen P. Heymann
       Stephen P. Heymann
       Assistant United States Attorney

Date: January 14, 2010