UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )  Nos. 08-CR-10223-PBS |
| | )         08-CR-10262-PBS |
| ALBERT GONZALEZ, | )  **[REDACTED VERSION]** |
| | ) |
| Defendant. | ) |

**DEFENDANT ALBERT GONZALEZ' RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant files this memorandum to respond to certain portions of the government's sentencing memorandum and to urge the Court, once again, that a sentence of 15 years is sufficient to serve the purposes of sentencing.

The government labels this case one of identity theft. Government's Sentencing Memorandum at 2.[1] The thefts at issue in the case before this Court were, however, thefts of *data*, not identity theft. This is not the classic identity theft case in which track 2 data is used to recreate the identities of real people and thereafter use those fabricated identities to invade their bank accounts, withdraw money, and ruin their credit. Gonzalez also notes several other things he did not do as part of the offense conduct at issue: he did not hack into government computer systems, he did not crash computer systems by spreading viruses or inundating them with spam, and he did not invade the privacy of individuals' computers to steal such data as passwords to compromise their financial life and invade their personal privacy.

---

[1] Page references herein are to the government's unredacted sentencing memorandum.

The government states at page 5 of its sentencing memorandum that the offenses charged in the New Jersey indictment put approximately 130 million payment card numbers at risk. Gonzalez was not, however, the one who put the card numbers at risk. These offenses were committed by "Hacker 1" and "Hacker 2", with Gonzalez playing only a peripheral role.

The government's sentencing memorandum states at page 14 that Gonzalez refused to answer any questions from Dr. Mills regarding his state of mind at the time the offenses were committed. However, as Dr. Mills' report makes clear, he did not attempt to ask Gonzalez any questions about the offenses. The Court's order permitted Gonzalez' counsel to be present during any questioning about his offense conduct. As a result, counsel for the government and for Gonzalez agreed to an interview by Dr. Mills at which Gonzalez' counsel would not be present, and Gonzalez would not be asked any questions about the offense by Dr. Mills. The government had a right to have Dr. Mills question Gonzalez about the offenses in the presence of defense counsel, but instead elected to limit the examination and have it conducted without the presence of counsel – an interview which Dr. Mills affirmed was characterized by candor and transparency. Gonzalez did not personally refuse to answer any questions and, had counsel been present, would have answered questions about the offenses to which he pled guilty.

In its sentencing memorandum at pages 7-8, the government references sentences in three other computer crimes cases. The third case to which it refers, that involving Max Butler, who was sentenced to 13 years, is particularly instructive. Butler was a far more serious criminal than the government's memorandum would suggest. According to the criminal complaint filed against him, *United States v. Butler*, No.07-CR-332 (W.D.Pa.)(Doc. 1), Butler, who had a prior conviction under 18 U.S.C. §1030, was "involved in a large scale criminal enterprise of hacking into computer

networks to obtain and thereafter, sell credit card and other identity information." Complaint at 1-2. He founded and operated a well-known website, used by individuals here and abroad, which was dedicated to the exchange of stolen identity information. That website was "used by individuals to further their criminal activities known as 'carding,' which encompasses the process of obtaining credit card account data and related identity information and turning it into useable credit cards before their unauthorized use is discovered." *Id.* at 2, 14. Butler hacked into the Pentagon Federal Credit Union, as well as a huge number of other banks, obtaining not only account numbers but also PINs and full profiles of the account holders, as well as the computer of a government employee. *Id.* at 10, 15. Butler sold the information he stole worldwide. *Id.* at 14. A June 29, 2009, Wired Magazine article, appended hereto as Ex. A, described Butler as a "superhacker" who "sought to unite the cyber underworld under his benign rule." He did so by hacking into other websites with similar purposes to his, wiping out their databases, and absorbing their content and membership into his own site. *Id.* at 2. Thus, even if the 1.8 million card numbers on Butler's computer reflected the sum total of numbers he stole throughout his lengthy criminal career, he was personally responsible for facilitating the sale by others of what was likely untold millions of credit card numbers and other identity information. *See also* Ex. B (December, 2008, Wired Magazine article).

      Defendant also cites to the Court additional cases which support his contention that a sentence of 15 years is necessary to prevent unwarranted disparity. In the Central District of California, Bradley Ruderman, who bilked investors, most of whom were family members, of $25 million, spending a substantial portion of that amount on luxury purchases and gambling, was sentenced to 121 months. *United States v. Ruderman*, No. 09-cr-00757 (Doc. 60). *See* Exhibit C. In a somewhat similar case in the Southern District of New York, Alberto Vilar was sentenced to 108

months. *United States v. Vilar*, No. 05-00621 (Doc. 421). *See* Ex. D. Eric Butler, a broker who defrauded his clients by hiding from them the fact that the securities in which he invested their money was backed by subprime mortgages – not the type of securities investors were led to believe – producing a loss to investors of $500 million, was sentenced in the Eastern District of New York to 5 years. *United States v. Butler*, No. 08-00370 (Doc. 363). *See* Exhibit E.

At pages 21-22 of its sentencing memorandum the government contends that the actual intended loss is greater than the amount arrived at by using the $500 multiplier, as the First Circuit has approved the use of the aggregate credit limits on stolen cards as the measure of intended loss. However, the government's discussion omits the fact that tens of millions of the accounts had expired and would therefore have no longer have had credit limits at all.

**[REDACTED MATERIAL]**

    Respectfully Submitted,
    By His Attorney,

    **/s/ Martin G. Weinberg**
    Martin G. Weinberg, Esq.
    Martin G. Weinberg, PC
    Mass. Bar No. 51948
    20 Park Plaza, Suite 1000
    Boston, MA 02116
    (617) 227-3700
    owlmgw@att.net

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this 22nd day of March, 2010, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including Stephen P. Heymann, AUSA.

    **/s/ Martin G. Weinberg**
    Martin G. Weinberg